Whyte, J.
delivered the opinion of the court, (Catron, Ch. J. absent.) Two questions are presented to this court for its decision, by the record, and the assignment of errors, &c. 1st. Whether an action of detinue for negro slaves, brought against the intestate in his lifetime, can be revived against his administrators in their *137 representative character. 2d. Whether upon the facts ,, . ,, , , . t , , set forth m the second agreement, a revivor can be had in this particular case. This cause has been argued at considerable length, and with much ability, by the counsel on both sides. The object and effect of the two agreements set forth in the record, will be first shortly noticed.
The object of the first agreement, is merely the change of parties, by the substitution of Benjamin F. Robertson in the place of the original defendants, without producing any other effect on the cause except what results from the admission then made, of Robertson, that he was possessed of the negroes sued for, and that they were demanded by the plaintiffs, and refused to be delivered up by him, before the action was brought. The object of the second agreement is, to state the events taken place subsequent to the first, viz: the death of the defendant Robertson; that Booker and Littlefield, his administrators, appeared pursuaht to the command of a scire facias, issued against them for the purpose of reviving the suit against them, and that they objected thereto, on two grounds: 1st. That an action of detinue cannot be revived against administrators. 2d. That the plaintiffs have not taken legal steps to revive against them in time; and the facts particularly, upon which the revivor on that ground is resisted. This agreement further states, that for the purpose of settling the abatement, it is agreed, that Robertson the intestate died possessed of the slaves, that they came to the hands of the administrators, as part of said intestate’s estate, and are now in their possession, or hired out for the benefit of the estate. These agreements, and the facts they contain, as to the law arising upon them, affecting the general question of revivor presented, can have no different effect from the common case of an action of detinue brought for negroes, against any private individual who dies pending the action, and application is made to re *138 vive it against his executors or administrators, in their representative capacity, having, for the purpose of dispensing with the attendance of witnesses, the like admission of facts to the present, to wit, demand by the plaintiffs, and refusal by the deceased to deliver before action brought. As to the further facts stated, that the slaves sued for were in the intestate’s possession at the time of his death, and that they came to the hands of the administrators as part of the intestate’s estate, and are now in the possession of, or hired out , by them for the benefit of the estate, they are altogether unimportant, and wholly inoperative on the case, as will afterwards be shown.
I shall now proceed to examine the first question presented by the record, whether an action of detinue for negro slaves brought against the intestate in his lifetime, can be revived against his administrators in their representative character.
The action of detinue affirms the specific chattels sued for to be the plaintiff’s, and that they are detained wrongfully by the defendant. This description of the action of detinue applied to the present case, shows, that' Jones and Glass as the administrators of their intestate Jas. Jones, and in their representative character, claim the negro slaves specified in the declaration, from Benjamin F. Robertson, who is thereby charged as detaining the possession of the said slaves from them, which possession they are entitled to. Admitting this state, ment to be true, that these plaintiffs in their representative character as administrators of James Jones deceased, were entitled to maintain this action of detinue, and to recover, and have from B. F. Robertson these negro slaves sued for, are they, under the event that has happened, viz. the death of Robertson during the penden-cy of the suit, entitled by law to revive and continue it, and to recover and have the said negroes froip Booker *139 and Littlefield, administrators, m their representative capacity to him.
It is contended for the plaintiffs, that upon the authorities, the action of detinue survives against them as administrators, for it is an action ex contractu, and not ex delicto, founded on a contract, and not on tort, and. 1 Chitty’s Pleading 118, is cited, where it says, it (detinue) lies upon a contract for not delivering a specific chattel in pursuance of a bailment, or other contract, and 2 Saund.Rep. 117, C. note, where it is said, “debt and detinue may be joined in the same action, for they are of the same nature, but not debt and trespass, or debt and account; they cannot be joined, for they are of different natures.” These authorities cited in support of the position advanced, are not co-extensive with the position. They only prove affirmative instances, where detinue is taken and considered as an action founded on contract, as a bailment; but they are not exclusive to the negative, that detinue is not ex delicto. The law is, and so are the books, that detinue is both ways, either ex contractu or ex delicto, according to the nature of the case, to which the party using it will make its form conformable; and so says the same author in another place, where he is more distinctly treating of the extent, and laying down the boundaries of actions. In the same vol. (1 Chitty, page 87,) he says, “personal actions are in form ex contractu or ex delicto, or in other words, are for breach of contract, or for wrongs unconnected with contract. Those upon contracts, are principally assumpsit, debt, covenant and detinue; and those for wrongs, are case, trover, detinue, replevin and trespass vi et armis. And in page 362 of same book, he says, “actions in form ex delicto, are case, trover, detinue, replevin, trespass and ejectment; the applicability of which remedies. has been considered already.” The particular mode of framing decía, rations in them is stated in the precedents; and in these last extracts from this work of the able author, I *140 consider the law correctly stated, and conformable to the best authorities, as far as I have been able to examine them. Detinue may therefore be brought on a contract, or on a wrong, according to the nature of the case, to which a proper degree of respect must be paid.
The plaintiff’s counsel, in corroboration of his position, that detinue is an action ex contractu, because it is founded on a bailment, by which is to be understood, always founded on a bailment, has argued, that chattels casually lost,' and afterwards coming into the bands of a person who finds them, is a reception of them for the use and benefit of the owner, on which the law raises an implied promise in favor of the owner. Therefore the statement of the count in detinue “casually lost, and afterwards came to the possession of the defendant by finding,” is a contract, or bailment in law. This extended sense of the word bailment, I have not found in any book in the course of my limited reading. Lord Coke disallows it. He says, (1 Inst. 286,) detinue lieth where any man cometh to goods by delivery or finding; expressly recognizing in his pithy language, two different ways. If we look into the precedents in detinue, Lord Coke is supported and followed by declaring either upon a bailment or finding. This bailment is either general or special. General, when the delivery is by one man to another, to be re-delivered upon request.— Special, when the bailment or delivery to the bailee, is upon some condition, or term, or stipulation afFecting and operating upon the re-delivery. Thus, Bl. (book 2, 451) says, “bailment, from the French bailer, to deliver, is a delivery of goods in trust upon a contract, express or implied, that the trust shall be faithfully executed on the part of the bailee. As if cloth be delivered, or in our legal dialect bailed to a tailor, to make a suit of clothes, he has it upon an implied contract to render it again when made, and that in a workmanlike manner.” This is an example of a special bailment on an implied *141 contract. If a pawn-broker receives plate or iewels on a pledge, or security for the payment of money lent thereon, on a certain day, he has them on an express contract or condition, to restore them if the pledgee performs his part, hy redeeming them in due time.—
This is an example of a special bailment on an express contract. A number of other cases of special bailment are put by Blackstone, in all which there is a delivery stated, for as a delivery is the very essence of a contract of bailment, without delivery there is no contract of bailment.
All other modes are comprehended under the term finding, as by force, fraud, trespass, &c. I will cite one case more to show that a count upon a finding, is not the same as a count upon a bailment. It is the modern case of Mills vs. Graham, (4 Bos. and Pul. 140, 146,) Chief Justice Mansfield says, “I do not see how the goods could he in the defendant’s hands under what he calls a bailment; he had first fraudulently received them, concealing the circumstances of his minority. The goods being wrongfully in the defendant’s hands from the beginning, without any valid contract between him and the plaintiff, it seems to me they must be considered in the same situation as if the defendant had wrongfully gotten possession of them without pretence of bailment.— It is not disputed, that a count in detinue framed upon a supposed finding, may be supported, if the goods are wrongfully in the defendant’s possession. Again, he says, “a wrongful conversion, or a wrongful detainer after demand, is considered as evidence of finding.” Besides, if the allegation of a particular bailment is material, it is also traversable. But the plea here is, that the defendant doth not detain in manner and form as the plaintiff hath alleged; this does not apply to the finding. But without professing to decide this point, it is sufficient to say, that the goods did not come to the defendant, under what would he properly called a bail *142 ment: they came into his hands by fraud; and the.right of the plaintiff must be considered just the same as it the goods had come to the defendant’s hands without pretence of right or delivery.”
That a casual loss of goods therefore, by the plaintiff, (the owner) and the afterwards coming of them into the hands of the defendant by finding, is a bailment or delivery of them by the owners to the finder, is as little countenanced by the books as it is by the nature of things. But 'let this impossibility be removed by supposing the loss and finding to be a delivery of the one to the other of these parties, it would not avail the plaintiff on the question of revivor, for the gist or ground of the action of detinue, is the detention, (1 Inst. 286: 3 Bl. Com. 152: 1 Chit. Plead. 119:) which is unlawful, and a tort or wrong; and on this ground the action cannot survive. And it matters not in this view, whether the taking of the goods' was at first lawful or unlawful, when the detainer afterwards, which is the gist of the action, is a wrong. But another argument is made by the plaintiff in error, to establish the position, that detinue is an action ex contractu, and therefore survives; which is this, that the allegation in detinue, that the defendant acquired the goods by finding, is not traversable, for which is cited 1 Chit. Plead. 120; and this allegation being a bailment, and that not traversable, therefore it follows, that detinue is on contract, and survives against the administrators. If the premises of this argument were correct, it would militate against the conclusion of revivor, viz. to authorize a revivor against the administrators; for if the finding is not traversable, and that because it is a bailment, (then the finding can only be not traversable in those cases of bailment where the incident of traverse is not permitted. Now, it is not a settled matter in the books, in what cases of detinue brought on bailment, a traverse of the bailment is allowed. There seems to be no question as to a general bailment, as where *143 goods’are delivered to be re-delivered upon request; there the bailment is not traversable, and therefore the argument is not well founded. This seems to be the opinion óf Lord Coke, (1 Institutes, 295 a) where he sajs, “in an action upon an arbitrament, or in an action of detinue by the bailment of another hand, the defendant shall wage his law, because the debt and the detinet is the ground of these actions, and the contract or bailment, though it be by another hand, is but conveyance, and not traversable. So the same is (2 Mod. Entries, 425, 2 C. 13) where it is laid down, the bailment is not traversable where the defendant may wage his law, for there his oath that he detains not, is sufficient; for if he detains not, there could be no bailment. Cited, 8 Edward IV. Pl. 7. Again, in the same book (425,) it says, it is a good plea for the defendant to say, that the plaintiff pledged them for money which is not paid; for it could not be merely a bailment to re-deliver. Cited, 34 H. C. 42, Pl. 13. These last citations are from the title in the book, “Pleadings in Detinue,” and they go to show the same as Lord Coke, that a general bailment cannot be traversed. The last goes to show, however, that a special bailment may be pleaded. Lord Coke, ubi supra, says, by another hand, that is, the trust confidence is continued in the bailee by the bailor, as by the hand of his agent, attorney in fact, and this agrees well with what he says before in the same page: “only in some cases in debt, detinue or account, the defendant is allowed by law towage his law. Whether in bailment upon a special bailment, the special bailment is traversable, seems not to be settled; the judges latterly not seeming to agree on the point.—See the above Modern Case of Mills vs. Graham. Supposing however a special bailment not to be traversable, then it follows, that cases of detinue, founded upon either a general or special bailment, are cases of contract, and that all others, as where the count is, that the *144 defendant acquired the goods by finding, are cases of tort. This result repels the argument to revive against the administrators in the present case, the count being on a finding which indicates or expresses a wrong, not a contract.
Another argument in support of the revivor against the administrators, is founded on the law wager, and is this: that the reason why detinue will not lie against administrators, at common law, is, that in detinue -the intestate could wage his law, but as the administrators are not by the same law permitted to do so, or wage their law on that contract, it is said they should not be sued upon it. But now the law wager being taken away, and not existing here, the privilege never .was in the intestate, and therefore the- administrators could not claim an exemption from suit, when the ground for it was taken away. Suppose the law wager on trial, per legem, still subsisted, the argument would not apply to the present case, for the law wager in detinue only applied 4o those cases in detinue founded on a general bailment. 1 Inst. ubri supra. But to give the more extended and doubtful operation of embracing detinue in special bailment also, still it would not reach the present case, which is neither the one or the other, but det-inue founded on a wrong. But the law goes further still, and permits not this revivor, even if the action of detinue had been founded on a general bailment, a lawful and proper contract. Neither could it have been brought in the first instance against these administrators as such.'— Why? it maybe asked. .Because such liability is inconsistent with, the nature of their office. They represent their intestate as to his effects, and are liable for a proper and correct distribution of them; but they are not liable for the wrongs and injuries done and committed by him; nor are the assets which were of the said intestate in their hands so liable. I will. here add one remark on the facts admitted by the.second agreement *145 of the parties, viz. that the intestate died in possession of the negroes sued for; that they came to the possession of the negroes as part of their intestate’s estate; that they are still held by them, or hired out by them for the benefit of the estate. The admission of these facts does not produce the effect purported perhaps to be shown by them. The actual taking them by the administrators into their possession, as a part of their intestate’s property, does not make them so, if they are not so in fact. By law such taking by the administrators as such, and their acknowledgment of having done so, does not make them assets, or change the property in them, or authorize the administratorsin intermeddling with and making appropriations. of them, in the discharge of their official duties, in the payment of debts, or distributing the surplus. The law decides the character and effect of such taking and intermeddling, which the admissions, declarations and "acts of the administrators, in their representative capacity, cannot control. If they were such chattels of the intestate as constituted assets, or his properly, the taking was right and lawful. If on the other hand, they were the property of other persons, tho taking was of their own wrong and unlawful, for which they were liable and answerable, not as administrators, but in their own private capacity as individuals, for the wrong committed by such interference with the property of others. It is no excuse to rebut this consequence, that these chattels were in the possession of the intestate at the time of his death, and found by them among the intestate’s chattels. Administrators are bound to know the intestate’s property wherever it is; and they also shall be intended to be cognizant of all contracts of the intestate, as well contingent as certain. Select Cases, 36, Off. of Exec’rs. Supplement, 145.
Having now examined this question of revivor against administrators in actions of detinue, in reference to the nature and form of the action, and in doing so, having also *146 adverted to the points made in the argument upon them by the counsel, I shall now proceed to show from the books, the nature of the interest the executor or administrator has in the property of the deceased, the powers he can as such representative exercise, wim the duties devolving upon him in consequence of fhose powers; and whether, upon this view, the extent o^his liabilities authorizes this proceeding of revivor in detinue against him as administrator. At the same time will be noticed another question, intimately connected with the present, differing in its case, but depending on the same principles precisely as the one before the court, viz. whether an action of detinue lies against an administrator as such; for it was said upon the arguments of the plaintiff’s counsel, that an action of detinue for the same cause stated in this record, the detention of these ne-groes by the intestate, could have, after the intestate’s death, been brought and supported against Booker and Littlefield, as his administrators. That permitting the action brought against the intestate Robertson to fall by the abatement, without revivor, they could not avoid a question on the statute of limitations, which in following that course must have been met, and that this application for revivor was adopted, as a concurrent remedy within their power.
Before I proceed further, it may be necessary here to remark, that the terms, executor and executors, administrator and administrators, in what has been said in this case, are used generally in that alternative of their twofold meaning and acceptation, which denotes their official character and legal connection with the testator and intestate, as privy in representation, (1 Inst. 271 a) and not as descriplio personal or personarum, in which last sense or acceptation they are often used-in the books to point out the individuals or persons, simply as divested of, or not having reference to their representative character as executor or as administrator; in all which *147 occurrences an attention to the context easily discovers the capacity intended to be used.
Haying made this remark, to proceed with'the subject: an executor or administrator represents the person of the testator or intestate, in respect to his personal estate, the whole of which, generally speaking, vests in the executor immediately on the testator’s death; it vests in the administrator on the grant of the letters of administration, and the grant hath relation to the death of the intestate. But the interest in the deceased’s property, which thus vests in his representative as his executor or administrator, is very different from that which belongs to him in regard to his own. In the former, he is not entitled in his own right, but in outer droit, in the right of the deceased, as a trustee, having the possession, or rather the custody of the effects or assets for the payment of debts, the satisfaction of legacies, or division amongst the next of kin under the statute of distributions; whereas, contrasted with the interest the executor or administrator has in his own goods, in his private capacity, it is an absolute interest. See Off. of Exe’r. 85: Plowd. 525: 2 P. Wms. 212: Toller, 133. Hence, in consequence of this limited interest that an executor has in the assets of his testator, if he grants all his property, such as belongs to him in his character of executor shall not pass, (Off. of Exec’r. 86,) unless he name himself the executor in the grant, (ib.) and not even in this last case if the grant was infected with fraud. So in England, if an executor be attainted of treason or felony, he incurs a forfeiture of his own goods and chattels, but those of which he is possessed as executor, shall not be forfeited. 2 P. W. 200, 201. Nor can the testator’s goods be taken in execution for the executor’s debts, either on a recognizance, statute, judgment, or for his debts of whatever nature, unless there be sufficient evidence of the executor’s having converted the goods to his own use, for then they cease to be the, *148 goods of the testator-, or unless the executor consents to such seizure by execution, and then it differs not from any other alienation by him as executor, which is good, unless there is fraud. See Whale vs. Booth, 4 Term Rep. 625, note. Neither can an executor bequeath the effects he holds in that right, (Plowd. 525;) and if the executor die without a will, his administrator shall not in-termeddle with the testator’s estate. Nor, if the executor die in debt, shall the effects of his testator be liable in the hands of his representative, for the executor’s debts. So if an executrix marry, all the personal estate and chattels of which she is possessed, in her own right, vest absolutely in her husband; but in respect to the goods of the testator, they are not transferred to the husband. Off. of Exec’r. ,89. Many more instances might be produced from the boobs, but these may suffice to show the nature of tire holding of an executor or administrator, as such, of the effects of the deceased in his hands, and the interest he has in them, vested in him in his representative capacity. They all prove that his holding is fiduciary, his interest limited, and his powers circumscribed; his duties and liabilities co-extensive with the trust; and what is most important to be remarked, all these incidents, powers, properties, rights, duties and liabilities of his representative character of executor or administrator, are predicated upon and have sole reference to that bind of property, effects, goods and chattels which were of the testator, and constitute what are called assets in the hands of his executor; and in like manner of intestate and administrator, they have not reference to any other kind of property, nor to the goods and chattels, or property of other persons than the deceased, and which might have been in the possession of the deceased at the time of his death. The above citations both impliedly and affirmatively show this. But the authorities go further, and totidem verbis, in express terms, so lay it down. Thus the Office of Execu *149 tor, Supplement 76, says, that the- goods and chattels of other men in the hands of executors, that were in the possession of the testator, and he had no right to them, shall not be assets; as if the executor recovers a rent that belongs to the heir, it shall not be assets. If the testator were outlawed at the time of his death, his goods are not assets, for they were none of his; but after the reversal of the outlawry, they are. So Toller’s Law of Executors, 153, says, but to give the executor a title, or to constitute assets, the absolute property of such chattels must have been vested in the testator; and therefore, if A take a bond in trust for B, and dies, it shall form no part of the assets of B. The same is laid down in Bacon’s Abridgment, and almost in the same words. See 3d vol. page 58, Wilson’s edition; and see 1 Salk. 79, case of Leering vs. Torington, which says, if the obligee assigns over a bond, and covenants not to revoke, and dies, that the bond is not assets in the hands of the executor of the assignee. The law then denies to the executor as such, the power of suing for and maintaining a suit for chattels which are not assets.
It is not within the bounds of their office and duty to do so; and the attempt at which is condemned by the law, in the payment of costs in their private capacity. So the law will not permit an action to be brought or supported against them, founded on the supposition that the property of other persons than the testator can be assets; and on this ground, and for this reason, detinue cannot lie against executors, or administrators as such; for it disaffirms the property to have been the testator’s, or intestate’s, and by the law, the representatives could have no other property as such, and their liabilities as representatives extends only to that property which they have as representatives, not to that they may have in their own right, or to the property of other persons, though found amongst the property of the deceased after his death, and which was in his possession before his *150 death, and taken by the representative into his possession as, and for the property of the deceased, or as assets.
These principles are laid down and established in all the books that have been within my reach to consult, neither has any thing to the contrary, deserving notice, been found. I shall cite a few more of those cases that are the most prominent, and parallel to the present in its circumstances, continuing the resemblance through most of the particulars, and fully embracing the present question, so as of necessity to comprise it within their limits.
In Wentworth’s Office of Executors, chap. 1G, where the author is showing where judgment shall be against the executor’s own goods, and where the nature of the action shall lay the whole debt or thing recovered, upon the executor’s own goods, he says, “and this we shall find in some few cases. 1st. Where an executor is sued for rent accrued and behind after his testator’s death, upon a lease for years made to the testator, and by him left to his executor; here it shall be adjudged, and levied on his own goods; for that so much of the profits as the rent amounted to shall be accounted his own goods, and not the testator’s; therefore he is to be sued in the debet and in the detinet, whereas in other cases, he is not, but in the detinet only, being sued as executor. 2d. Which is a case in point, says, “so if any thing delivered to, or detained by his testator, come to his hands, and he still detains the same after demand, and be thereupon sued in action of detinue for this as his own act.— Nor in this case need he be named as executor, for he shall not answer damage's for his testator’s detaining.” This last case in the book is the very case before this court, in the present record.
Here the negroes in the declaration specified, were detained by Benjamin F. Robertson, the intestate, who admitted the demand and refusal, or detainer; and he died in possession of them. These negroes came to the *151 hands of Booker and Littlefield, the administrators of Robertson, the intestate, and they still detain them; for they have hired them out for the benefit of testator’s estate, as they say in the record. The book says, “and be thereupon sued in an action of detinue;” that is, the executor be sued. Here the administrators are sued in an action of detinue depending against them by the process of scire facias, and prayed to be enforced against them by the motion to revive, and make them parties, as administrators. But the books say not, for this is their own act, in detaining the negroes after the death of their intestate Robertson; nor need they be named as administrators, for they shall not answer damages for their intestate’s detaining. In other words, a suit in de-tinue cannot be supported against administrators as such, upon the detainer of their intestate, or upon their own detainer; not in the foimer case, for it is a wrong or tort of their intestate, for which the assets are not liable, nor they responsible as administrators, holding them and entrusted with their appropriation and distribution; nor in the latter case, for the detainer is their own act, for which they are answerable in their own private capacity.
Another case in point to the present on this record, is to be found in the same book, page 92, where Went-worth says, “if an executor amongst his testator’s goods find, and take some not his, and after these being claimed by the owner, who left them in the custody of the testator, the executor not crediting the same, still keeps them, and the owner thereupon recovers damages in an action of trespass, or of trover and conversion; now, and so in all other like cases, says Wentworth, are these goods become the trespasser’s in property, because he has paid for them. This case exhibiting the same facts for ground of suit, as the present on this record, proves these three particulars. 1st. That the detainer by the executor of another man’s goods, though found amongst the *152 testator’s goods, being claimed bj the owner, the executor discrediting the claim still detains them, an unlawful and tortious detainer by the executor, amounting to a trespass, because the action of trespass, or of trover and conversion, could be supported on it, and the value recovered in damages, by which they become the executor’s property, he having thus paid for them. 2dly. It proves, that by this wrongful detainer by the executor, he was liable in his private capacity, and not in his representative capacity of executor, for there can be no question, that trespass or trover will not lie against an executor as such. And 3dly. It proves, that if goods came lawfully to the testator’s possession, as being left in his custody by the owner, as in the words of the boot, yet the detainer after claim and denial was a tortious detainer, amounting to a trespass, or trover and conversion, for the which an action of trespass, or trover and conversion lies. The above cited case from page-194, corresponds with this. In both cases a bailment is laid, and that a general bailment. The statement of the former in page 194, is, “if any thing be delivered to,” in the latter, page 92, the statement is, “goods left in the custody of the testator,”'in both cases pure bailments, but as we have seen not affecting, or in the least influencing the question on this record; for if bailment has once existed, it is lost sight of upon detainer after demand to redeliver; which detainer then occupies the ground, or constitutes the gist or only cause of action in detinue.
A few other authorities equally respectable will be cited to the same effect. Lord Coke, in Lampet’s case, 10, 60, 51, says, “if one bails goods to another, and af-terwards the bailor releases to the bailee all actions, the bailee dies, and a writ of detinue brought against his executors, they shall not take advantage of the said release for that determined by the death of the bailee; and the action given against the executors is a new action, (although of the same nature) grounded on their *153 own detainer. This authority is so plain and express it requires no comment.
In Sir William Jones’ Reports, 173, 174, is another case, Le Mason vs. Dixon, in the court of King’s Bench. 3 Car. 1, to the same purport as the above. The Report is in Law-French, the legal language of those times; it is in these words: "et issint si J. S.prist biens tortiousment, et morust, si les biens fueront consume, null trespass gist vers executors J. S. mes si les executors ount les biens en lour possession, donque detinue gist vers eux, sur lour possession demesne;" cites 21 H. VI. which may be thus rendered: <sand therefore, if J. S. takes goods tortiously, and dies, if the goods shall have been consumed, no trespass lies against J. S. But if the executors have the goods in their possession, then detinue lies against them, upon their own peculiar possession.”
Sergeant Williams, the learned annotator on Saunders’ Reports, treating on the principle of the common law, actio personalis, moritur cum persona, recognizes the law of this case by express citation, which, from his extensive views, and acknowledged accuracy on every point he touches, proves, that there is in the English books no case conflicting with this, and that from the 3d of Car. I, Anno. 1627, the time the case was discussed in the court of King’s Bench, down to the present, its doctrine and authority have been acknowledged and unquestioned. Under this view, I deem it superfluous to add any thing further on this subject. The conclusion is, that this action of detinue for the specific ne-groes brought against the intestate, Benjamin F. Robertson, cannot be revived against his administrators as such, Booker and Littlefield.
This first question having disposed of the cause, it is thereby rendered unnecessary to examine the second question. There is therefore no error in the circuit court, in rendering judgment in this cause. Let it be affirmed.